UNITED STATES v. SCOTT.

(Circuit Court, D. Kentucky. October 7, 1895.)

1. INDICTMENTS—SINGLE TRANSACTION CONSTITUTING SEVERAL OFFENSES.
   By the great weight of authority the prosecutor is at liberty to charge, in a single count, as a single offense, a single act or transaction in violation of law, although that act or transaction involves several similar violations of law with respect to several different persons. The application of this rule to indictments in the federal courts is not affected by the provisions of Rev. St. § 1024, in relation to the joinder of several offenses in different counts of the same indictment.

2. SAME—VIOLATIONS OF CIVIL SERVICE LAW — SOLICITING POLITICAL CONTRIBUTIONS.
   In the statute making it an offense for any officer of the United States to "directly or indirectly solicit or receive or be in any manner concerned in soliciting or receiving" any assessment, etc., for any political purpose (Act Jan. 16, 1883, § 11), the expression, "being concerned in," is not a legal term or conclusion which needs a specification of facts for completeness of description. It is a colloquial expression, equivalent to "being engaged in," or "taking part in," and sufficiently informs the accused of what the government intends to prove; and hence it is sufficient to charge the offense in the words of the statute.

3. SAME.
   Failure of the indictment in such case to name the particular persons from whom the contributions were solicited or received does not render it bad on demurrer for indefiniteness, where it is further averred that the names of such persons were unknown to the grand jury.

4. SAME.
   Averments that the accused solicited and received from another his contribution for a political purpose charge, by implication, that the solicitation and reception were for the same purpose as the contribution, and

no specific averment that the accused knew the purpose of the contribution is necessary; nor is the implication changed or weakened where the accused, instead of being charged with directly receiving the contribution, is charged with being unlawfully concerned in receiving it "indirectly."

5. SAME.

A charge that the accused was "knowingly" concerned in unlawfully receiving an assessment from officers or employés of the United States for a political purpose sufficiently charges him with knowledge that the persons from whom the contributions were received were officers or employés of the United States.

At the February term in 1893, Albert Scott, the defendant, was indicted in one indictment containing seven counts for different violations of section 11 of the act of January 16, 1883 (22 Stat. 403), entitled "An act to regulate and improve the civil service of the United States."

Section 11 is as follows: "That no senator or representative or territorial delegate of congress, or senator, representative or delegate elect, or any officer or employé of either of said houses and no executive, judicial, military or naval officer of the United States, and no clerk or employé of any department or branch or bureau of the executive, judicial, military or naval service of the United States shall directly or indirectly solicit or receive or be in any manner concerned in soliciting or receiving any assessment, subscription or contribution for any political purpose, whatever, from any officer, clerk or employé of the United States or any department, branch or bureau thereof or from any person receiving any salary or compensation from moneys derived from the treasury of the United States."

The first count of the indictment charges that Scott while collector of internal revenue for the Fifth internal revenue collection district of the state of Kentucky, on the 15th day of October, 1890, in the district of Kentucky, "was then and there unlawfully concerned in soliciting a contribution of $1,808 of said money indirectly from divers persons to the grand jurors aforesaid unknown, which said persons were then and there officers of the United States, to wit, internal revenue storekeepers and internal revenue gaugers, and internal revenue storekeepers and gaugers, duly appointed and acting as such within and for the Fifth internal revenue collection district of the state of Kentucky, and the names and numbers of said officers, to wit, said internal revenue storekeepers, and said internal revenue gaugers, and said internal revenue storekeepers and gaugers, are to the grand jurors aforesaid unknown, for a political purpose, to wit, a contribution for the use of a political party called the Republican party, but a further description of said political purpose is to the grand jurors aforesaid unknown, and cannot therefore be set out." The fifth count, in the same language, charges Scott with being unlawfully concerned in soliciting upon the 31st of October, 1892, a contribution of $806.34 indirectly from persons similarly described, and for a purpose similarly stated. The sixth count of the indictment in the same words charges Scott with being unlawfully concerned in soliciting a contribution of $912 on the 31st of May, 1892, indirectly from persons similarly described, and for a purpose similarly stated. The second count charges that Albert Scott, being a duly-appointed collector of internal revenue, etc., "was then and there unlawfully concerned in receiving a contribution of the lawful money of the United States, to wit, a contribution of eight hundred and fifty-nine and 88/100 dollars of said money indirectly from divers persons to the grand jurors aforesaid unknown," which said persons were then and there officers of the United States, describing them as in the other counts, for a contribution similarly described. There is in this count no averment that Scott knew that the money received by him was for a political purpose. The third count charges Scott with being unlawfully concerned in receiving a contribution of the lawful money of the United States, to wit, a contribution of $500, on the 30th day of June, 1892, indirectly from divers persons to the grand jurors unknown, who are described as in the other counts, for a purpose similarly described, and concludes with this averment: "And the

said Albert Scott then and there well knew that said contribution which he was then and there so concerned in receiving had been contributed by said storekeepers and said gaugers in said district for the political purpose aforesaid." The fourth count of the indictment charges Scott exactly as the third count, for receiving a contribution of $500 on the 7th of November, 1892, and contains the same averment as to his knowledge. The seventh count charges that Scott, being a collector of internal revenue in the Fifth Kentucky district, "unlawfully was then and there knowingly concerned in receiving an assessment of $1,000 from a great many, to wit, fifty, persons, whose names are to the grand jurors aforesaid, unknown, which said persons were then and there officers of the United States, to wit, duly appointed and acting United States internal revenue storekeepers, and internal revenue gaugers, and internal revenue storekeepers and gaugers within and for the Fifth internal revenue collection district of the state of Kentucky, for a political purpose, to wit, for the use of the political party called the Republican party, and a further description of which said purpose is to the said grand jurors unknown." A general demurrer was filed to the indictment by defendant.

William M. Smith, U. S. Atty.

A. E. Wilson, Burton Vance, and C. H. Gibson, for defendant.

TAFT, Circuit Judge (after stating facts as above). The first question arising on the demurrer is whether the counts are bad for duplicity. Each count charges the defendant with either receiving or soliciting contributions from more persons than one. It is said that under the statute the soliciting or receiving of a single contribution from a single person is a distinct offense, and that when the contributions are received from several persons there are as many different offenses committed. It is a general rule of criminal pleading that the prosecutor is at liberty to charge in a single count as a single offense a single act or transaction in violation of law, although that act involves several similar violations of law with respect to several different persons. Thus it is established by the great weight of authority that larcenies from different individuals may be joined in one count when committed by the accused in the same single act. 1 Hale, P. C. 531; 2 Hale, P. C. 254; 2 Russ. Crimes, 127; 3 Chit. Cr. Law, 959; Com. v. Sullivan, 104 Mass. 552; State v. Hennessey, 23 Ohio St. 339; Hoiles v. U. S., 3 MacArthur, 370; State v. Holland, 5 Rich. Law, 517; State v. Thurston, 2 McMul. 382; State v. Newton, 42 Vt. 537; State v. Merrill, 44 N. H. 624; Wilson v. State, 45 Tex. 76; Lorton v. State, 7 Mo. 55; State v. Daniels, 32 Mo. 558; State v. Morphin, 37 Mo. 373. In Reg. v. Bleasdale, 2 Car. & K. 765, it was held that, where a man for several years had been stealing coal by an entry run by him into the seams of coal belonging to forty other coal-mine owners, he might be indicted on one count for all the thefts in his continuous series of coal mining. In Reg. v. Giddins, Car. & M. 634, it was held that, where the defendant had assaulted and robbed two persons at the same time and place, the robbery of both might be included in a single count. In State v. Nelson, 29 Me. 329, it was held that a defendant might properly be indicted in a single count for receiving stolen goods in one act of reception where the goods belonged to different owners. In Ben v. State, 22 Ala. 9, it was held proper to embrace in one count the poisoning of three persons where it had been accomplished by one act of the defendant. In Rex v. Benfield, 2

Burrows, 980, it was held proper to unite in one count of the indictment the publication of several obscene songs, where the act of publishing them was single. And the same rule prevails with respect to the libel of different persons. Rex v. Jenour, 7 Mod. 400. See, also, to the same general effect, State v. Edmondson, 43 Tex. 162; 2 Bish. New Cr. Law, § 888. See, also, 1 Bish. New Cr. Law, §§ 778, 1060–1064. There is little, if any, authority to sustain the proposition that it is not competent to join crimes of the character described committed by one single act or series of acts at the same time and place in a single count. The point of controversy which has arisen is whether, when a defendant has been convicted or acquitted upon an indictment for one of the separate offenses included in the many committed by a single act, such acquittal or conviction is a bar to a prosecution for another of the offenses involved in the same act; and upon this question the authorities are divided. U. S. v. Beerman, 5 Cranch, C. C. 412, Fed. Cas. No. 14,560, overruled by Hoiles v. U. S., 3 MacArthur, 370; Lorton v. State, 7 Mo. 55; Com. v. Andrews, 2 Mass. 409; State v. Thurston, 2 McMul. 393.

Section 1024 of the Revised Statutes of the United States provides that:

"When there are several charges against any person for the same act or transaction or for two or more acts or transactions connected together or for two or more acts or transactions for the same class of crimes or offences which may properly be joined instead of having several indictments, the whole may be joined in one indictment in separate counts. If two or more indictments are found in such cases, the court may order them to be consolidated."

I do not understand that this section qualifies the rule as it prevailed at common law with reference to the uniting of charges in the same indictment in different counts, or the charging as a single offense in one count a single act or transaction, which might also be treated as involving several distinct offenses. In Pointer v. U. S., 151 U. S. 396, 14 Sup. Ct. 410, it was held that this section left to the court to determine whether, in a given case, a joinder of two or more offenses in one indictment against the same person was consistent with the settled principles of criminal law. And so here, if the settled principles of criminal law permit the prosecutor to treat as one offense a single act involving several different and similar violations of law, there is nothing in the foregoing statute to prevent such pleading. It is easy to imagine circumstances under which the defendant by one act of reception or by one act of solicitation could have received or solicited contributions from many persons. In such a case the foregoing authorities seem to establish the propriety of embracing in one count the single act of solicitation or reception in all the aspects which it presents, with reference to the different persons whose contributions were solicited or received. It cannot be said, therefore, on demurrer, that the counts are bad for duplicity.

The next objection raised on the demurrer is that the description of the offenses charged is not sufficiently specific, because it fails to state how the defendant was unlawfully concerned in receiving or soliciting the political contributions. The statute makes it a mis-

demeanor for any officer of the United States "to be concerned" in soliciting or receiving a political contribution. The offense described was a new one. "Being concerned in" is not a legal term or conclusion which needs a specification of facts for completeness of description. It is a colloquial expression, equivalent to "being engaged in," or "taking part in," and sufficiently informs the defendant of what the government intends to prove. The general rule with respect to describing statutory crimes in an indictment is that it shall be sufficient to describe the offense in the words of the statute, unless it was the obvious intention of the legislature to require more particularity, or unless the close analogy between the statutory offense and a common-law offense requires the same detailed description in an indictment for the former as for the latter. U. S. v. Gooding, 12 Wheat. 474. In Heard, Cr. Pl. p. 173, it is said:

"Where a statute constitutes a new species of offenses, and does not refer certain acts to a known species of crime, it is sufficient to use the words of the statute."

In U. S. v. Gooding, supra, the statute prescribed a punishment for any one who, as owner of a ship, should aid or abet its being fitted out as a slaver. Two counts, in one of which a defendant was charged with aiding the fitting out, and in the other of which he was charged with abetting the fitting out, were held to be sufficiently specific, because in the words of the statute. If in such a case it was not necessary to be more specific by setting forth the means by which or manner in which the defendant aided or abetted, I do not think it is necessary here to show how the defendant was concerned in receiving or soliciting the contributions. In U. S. v. Simmons, 96 U. S. 360, where a defendant was charged with procuring another to do illegal distilling, it was said not to be necessary to specify the means or manner of the procurement. In the Gooding Case the indictment did not give the name of the person whom the defendant aided or abetted. In the Simmons Case it was deemed proper and necessary to set forth the name of the person procured. I do not think, however, that the phrase of the statute, "shall be * * * concerned in," suggests the absolute necessity for other human agency than that of the defendant in the commission of the offense, as did the word "procure" in the Simmons Case. Therefore the same particularity in mentioning the names of the defendant's partners in the misdemeanor, if there were such, would not be required.

The real indefiniteness contained in the counts in this indictment arises from the failure by the grand jury to name the particular storekeepers and gaugers from whom the contributions were solicited or received. The indictment charges that the names of those persons were to the grand jury unknown. It is well settled that where, in the description of the offense, it becomes necessary to specify the persons affected by the acts, the grand jury may, if it does not know the names of the persons, say so in the indictment. Whart. Cr. Pl. & Prac. § 111. If it appear in proof, however, that the persons referred to were actually known to the grand jury, then there is a fatal variance. Id. § 112. If the names subsequently become known to the prosecutor, the defendant may secure informa-

tion by a motion for a bill of particulars.    Id. §§ 702–705; Dunbar v. U. S., 156 U. S. 185, 192, 15 Sup. Ct. 325.

Third. It is objected to the first, second, fifth, sixth, and seventh counts that there is no sufficient averment in them that the defendant knew the purpose for which the contributions were made or solicited, or the official character of the persons from whom they were received or solicited. Where the statement of the act itself denounced in the statute necessarily includes a knowledge of the illegality of the act, no averment of knowledge is necessary. Whart. Cr. Pl. & Prac. § 164. To charge a man with soliciting a contribution from United States officers for a political purpose carries with it by implication a charge that the accused knew the purpose for which the contribution was solicited. The words "for a political purpose" may reasonably be construed to qualify not only the contribution, but the solicitation. Similarly, to charge that a man received from another his contribution for a political purpose, by implication charges that the reception was for the same purpose as the contribution; and the fact that, instead of being charged with directly receiving the contribution, the defendant is charged with being unlawfully concerned indirectly in receiving or soliciting such contribution, does not change the implication of the knowledge of the defendant. The seventh count charges that the defendant was knowingly concerned in receiving an assessment of a certain amount from 50 persons, officers of the United States, for a political purpose. The use of the word "knowingly" has always been held to supply the place of a positive averment that the defendant knew the fact subsequently stated. Dunbar v. U. S., supra; 1 Bish. Cr. Proc. (3d Ed.) § 504. Nor was it necessary to set out the specific averment that the defendant knew that the persons from whom the contributions were received were officers of the United States. In U. S. v. Northway, 120 U. S. 327–333, 7 Sup. Ct. 580, where a defendant, president of a bank, was charged with aiding and abetting the cashier of the bank in the misapplication of its funds, it was held unnecessary to charge specifically that the defendant then and there knew that the person whom he was aiding and abetting was such cashier. It was held that the knowledge that the president had of the cashier was necessarily implied in the co-existence of the official relations of both to the same bank. And so here. The fact that the defendant was the collector of the Fifth internal revenue collection district of Kentucky, and that the persons from whom this money was charged to have been received were storekeepers and gaugers of the same collection district, and by law under the control and direction of the defendant as collector, necessarily implies that the collector knew the official character of the persons from whom the money was received or solicited.

This disposes of all the objections raised by the demurrer to the indictment. The question of the sufficiency of an indictment is frequently a perplexing one. I have had serious doubts as to whether the indictment under consideration was sufficiently specific. But Judge Barr, in passing upon a similar indictment against one Riley [1]

---

[1] No opinion filed.

for similar offenses committed as the chief deputy collector of Scott, reached the conclusion that the indictment was good. Nothing but the clearest conviction that there was error in his ruling will justify me in reaching a different conclusion in the same court, where both indictments await trial. The demurrer will be overruled.